IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

GLENN J. HOPKINS,                )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )          NO. 12-3291
                                 )
CITY OF SPRINGFIELD,             )
                                 )
    Defendant.                   )

OPINION

RICHARD MILLS, U.S. District Judge:

Glenn J. Hopkins–the Plaintiff–has filed a Complaint wherein he asserts failure to accommodate and retaliation claims against Defendant City of Springfield under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 126, 12132 & 12203 ("ADA"); a claim for conspiracy to violate civil rights in violation of 42 U.S.C. § 1983; and a state law claim for consumer fraud and unfair and deceptive business practices act, 815 ILCS 505.

Pending before the Court is the City of Springfield's Motion to Dismiss.

# FACTUAL BACKGROUND[1]

## I.

In Count I, the Plaintiff purports to assert a failure to accommodate ADA claim. The Complaint alleges that City Water Light and Power (CWLP) is a public utility owned by Defendant City of Springfield and is subject to the requirements of Title II of the ADA. CWLP is operated under the direction of City Council and supervision of Mayor J. Michael Houston. The Plaintiff claims he is disabled as defined by the ADA.

The Plaintiff alleges his former residence of 1117 North 4th Street, Springfield, Illinois 62702 was subsidized under Section 8 from February 2007 until March of 2012 due to the Plaintiff's disability. He asserts the subsidy was unlawfully abated due to the death of his spouse and then terminated by the Springfield Housing Authority (SHA), a city agency overseen by the Mayor, because the Plaintiff contacted HUD in opposition to this action. Therefore, the Plaintiff was forced to pay the full rent that resulted in a constructive eviction after a civil action was brought in this

---

[1]For the purpose of this motion, the Court accepts as true the allegations of the Plaintiff's Complaint.

Court against the SHA.

The Plaintiff alleges that CWLP knew he was disabled within the intent and meaning of the ADA and further knew he had been subject to retaliation by the SHA. In paragraph 7 of his Complaint, the Plaintiff asserts that on eight different occasions, payment was made to CWLP for water or electric fees. However, his service was disconnected and he was assessed a $35 re-connection fee on each occasion for a total of $280.00

The Plaintiff further alleges he was evicted by court order in violation of the Fair Housing Act, despite landlord Terry Hicks having received partial payments. He asserts this was due to the SHA's unlawful termination of his subsidy.

The Plaintiff alleges that his electric service was disconnected on September 12, 2012, despite having paid for service earlier that month. He claims he was without power and was forced to leave the house that night before he could finish packing and moving his property. The Plaintiff further asserts that on the night of September 12, 2012, before he could return home the next morning to continue packing, the house was

burglarized. He claims a number of his possessions worth a total of nearly $3,000 were taken.

The Plaintiff alleges that, due to CWLP cutting service twelve days after having been paid and forcing the Plaintiff to abandon the home overnight, damage occurred to the landlord's property. The house was stripped of its plumbing and incurred other damages, including that holes were knocked in walls. The Plaintiff contends that because of the damage to the house which he alleges exceeded $10,000, he can no longer rent property in Illinois.

II.

In Count II, the Plaintiff alleges that CWLP retaliated against him in violation of Title II of the ADA. The Plaintiff asserts the retaliation was due to his numerous complaints to Senator Durbin and the Office of the Mayor concerning the repeated breaches of accommodation by cuts in services and the fraudulent imposition of re-connection fees. He further contends that CWLP knowingly retaliated and became party to the conspiracy of the SHA with the intent to harm the Plaintiff due to his legal

action against SHA.

## III.

In Count III, the Plaintiff alleges that pursuant to § 1983, the Defendant conspired to violate his civil rights. The Plaintiff asserts the Defendant knowingly became a party to the conspiracy of SHA with the intent to harm him because of his legal action against SHA, a city-based agency allowing CWLP to interfere with the action by cuts in service.

## IV.

In Count IV, the Plaintiff alleges that Defendant conspired to commit fraud and unfair exploitation of a disabled consumer in violation of 815 ILCS 505, causing unnecessary harm and injury.

## DISCUSSION

### A. Legal standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although factual allegations at this stage are accepted as true, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

A plaintiff cannot survive a motion to dismiss by merely providing notice of a claim. See Adams v. City of Indianapolis, 742 F.3d 720, 728-29 (7th Cir. 2014). Because of the plausibility requirement, "the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." Id. at 729 (quoting Twombly, 550 U.S. at 556).

B. ADA failure to accommodate claim

The Plaintiff alleges he qualifies as disabled for purposes of the ADA. Attached to his Complaint is a Notice from the Social Security Administration which provides that Plaintiff qualifies as disabled and is

thus entitled to monthly disability benefits.  Although the Plaintiff suggests the notice establishes he is disabled, that is not the case.  "Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA."  Weiler v. Household Finance Corp., 101 F.3d 519, 523-24 (7th Cir. 1996); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 802-805 (1999).  Therefore, although it is not apparent whether the Plaintiff qualifies as disabled under the ADA, the Court will assume he so qualifies for purposes of this motion.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity."  42 U.S.C. § 12132.  A plaintiff alleging discrimination under Title II must ultimately prove: "(1) the defendant intentionally acted on the basis of the disability; (2) the defendant refused to provide a reasonable

modification, or (3) the defendant's rule disproportionately impacts disabled people." CTL ex rel. Trebatoski v. Ashland School Dist., 743 F.3d 524, 528-29 (7th Cir. 2014) (citations omitted). "Accommodations are only required when necessary to avoid discrimination on the basis of a disability." Id. at 529 (internal quotation marks and citation omitted).

The Plaintiff alleges CWLP knew he was disabled. See Doc. No. 1 ¶ 5. Moreover, CWLP partially accommodated him as a disabled person by accepting and receiving partial payments each month for his electric and/or water bills. See id. ¶ 6. The Plaintiff asserts that CWLP received money in payments from him on the third of each month. He claims CWLP knew he received disability income. However, the Plaintiff contends CWLP ceased in its accommodation of his disability and cut service prior to the end of each month on several occasions, thereby repeatedly subjecting him to re-connection fees to restore utility services of water and electric as follows:

    (a)    Electric disconnection: on 8-3-2010, payment was made of $300.00 but was disconnected on 8-31-2010, and a reconnect charge imposed of $35.00.

    (b)    Electric disconnection: on 5-3-2011, payment was made

of $160.00, but was disconnected on 6-2-2011, and a reconnect charge imposed of $35.00.

(c) Water disconnection: on 10-3-2011, payment was made of $200.00 but water was disconnected on 11-2-2011, and a reconnect charge imposed of $35.00. Hopkins had filed suit against SHA in September.

(d) Electric disconnection: on 4-3-2012, payment was made of $120.00 but was disconnected on 5-1-2011, and a reconnect charge imposed of $35.00.

(e) Electric disconnection: on 6-1-2012, payment was made of $120.00, but was disconnected on 7-2-2012, and a reconnect charge imposed of $35.00.

(f) Electric disconnection: on 5-3-2012, payment was made of $120.00, but was disconnected on 6-2-2011, and a reconnect charge imposed of $35.00.

(g) Electric disconnection: on 8-3-2012, payment was made of $120.00, but was disconnected on 8-31-2012, and a reconnect charge imposed of $35.00

(h) Electric disconnection: on 8-31-2012, payment was made of $200.00, but was disconnected on 9-12-2012, and a reconnect charge imposed of $35.00, while demanding an additional $600.00 to restore the service, knowing Hopkins total monthly income was only $840.00.

(i) That CWLP collected $245 in reconnection fees to restore service.

See Doc. No. 1 ¶ 7.

Attached to the Defendant's Motion to Dismiss is the Affidavit of Ramona Yuskanich, the Commercial Office Manager for CWLP. In her capacity as Commercial Office Manager, Ms. Yuskanich has access to all

business records of CWLP, including those of the Plaintiff when he resided at 1117 North 4th Street, Springfield, Illinois. Ms. Yuskanich's Affidavit specifically addresses the allegations in paragraph 7 of the Plaintiff's Complaint, wherein he alleges his services were disconnected and he was assessed re-connection fees.

Generally, courts do not consider any documents outside of the pleadings in determining whether a Complaint states a plausible claim for relief. However, a court can consider a document attached to a motion to dismiss without converting the motion into a summary judgment motion, if the document was "referred to in the plaintiff's complaint and [is] central to his claim." See McCready v. eBay, Inc., 435 F.3d 882, 891 (7th Cir. 2006). Because paragraph 7 of the Plaintiff's Complaint refers to the dates his service was disconnected and the re-connection fees that were assessed, the Court concludes that Ms. Yuskanich's Affidavit may be considered at this stage.

Ms. Yuskanich states as follows as it relates to the dates alleged in paragraph 7 of the Plaintiff's Complaint:

a. On 8/11/10, a disconnect notice was issued for $301.68 and was due on 8/23/10. No payment was received. On 8/26/10, CWLP attempted to call Mr. Hopkins for a courtesy call but was unable to leave a message because the voice mail box had not been set up. On 8/30/10, the electric was cut for non pay. Mr. Hopkins called CWLP on 8/30/10 after being cut and stated he had a bad air conditioner and was getting it replaced. He also stated he was on a fixed income and would call monthly to work out arrangements. The electric was reconnected 8/30/10 and a payment of $300.00 was received on 9/3/10. A $35.00 reconnect fee was charged.

b. On 5/13/11, a disconnect notice was issued for $264.49 and was due on 5/23/11. No payment was received. On 5/31/11, CWLP attempted to call Mr. Hopkins for a courtesy call but was unable to leave a message because the voice mail box had not been set up. On 6/2/11, the electric was cut for non pay. Mr. Hopkins came into the office after being cut and set up an arrangement to pay $200.00 on 6/3/11 and $200.00 on the 3rd of every month for the next 3 months after that. The electric was reconnected 6/2/11 and payment of $200.00 was received on 6/3/11. A $35.00 reconnect fee was charged.

c. On 10/13/11, a disconnect notice was issued for $410.25 and was due on 10/24/11. No payment was received. On 10/31/11, CWLP attempted to call Mr. Hopkins for a courtesy call but his phone number was no longer a working number. On 11/2/11, the water was cut for non pay. Mr. Hopkins came in the office after being cut. The water was reconnected 11/2/11 and a payment of $200.00 was received on 11/3/11. The $35.00 reconnect fee was waived, as a courtesy.

d.  On 4/13/12, a disconnect notice was issued for $123.23 and was due on 4/23/12. No payment was received. On 4/26/12, CWLP attempted to call Mr. Hopkins for a courtesy call but the phone number was no longer a working number. On 4/30/12, the electric was cut for non pay. Mr. Hopkins came in the office after being cut and set up arrangements to pay $120.00 on 5/3/12 and $200.00 on 6/3/12. The electric was reconnected 4/30/12 and a payment of $120.00 was received on 5/3/12. A $35.00 reconnect fee was charged.

e.  On 6/3/12, a disconnect notice was issued for $203.70 and was due on 6/25/12. No payment was received. On 6/28/12, CWLP attempted to call Mr. Hopkins for a courtesy call but no longer had a phone number to reach him. On 7/2/12, the electric was cut for non pay. Mr. Hopkins came in the office after being cut and set up an arrangement to pay $120.00 on 7/3/12. The electric was reconnected 7/2/12 and a payment of $120.00 was received on 7/3/12. A $35.00 reconnect fee was charged.

f.  This incident refers to the same incident stated in 7(b).

g.  On 8/14/12, a disconnect notice was issued for $525.61 and was due on 8/24/12. No payment was received. On 8/28/12, CWLP attempted to call Mr. Hopkins for a courtesy call but had no phone number to reach him. On 8/30/12, the electric was cut for non pay. On 8/31/12, Mr. Hopkins came to the office and paid $200.00 and set up an arrangement to pay the remaining $360.61 on 9/7/12. The electric was reconnected 8/31/12. A $35.00 reconnect fee was charged.

h.  Mr. Hopkins failed to pay the agreed $360.61 on 9/7/12

which resulted in the electric being cut on 9/12/12. The water was cut on 9/19/12 because payment had not been received to restore electric service. The account was then finalled on 9/19/12. Services were never restored therefore no reconnect fees were charged. The final balance owing on Mr. Hopkins' account is $1,227.89.

    i.    CWLP charged a total of $175.00 in reconnect fees from 8/31/10 to 9/19/12.

See Doc. No. 8-2.

The Court concludes that Plaintiff has failed to allege an ADA claim that is plausible on its face. Based on a review of both the Plaintiff's own Complaint and Ms. Yuskanich's Affidavit, it is apparent that CWLP disconnected his services for non-payment and it imposed standard re-connection fees upon payment. Paragraph 7 of the Complaint establishes that Plaintiff had a history of non-payment that spanned more than two years. The Plaintiff has pointed to no authority which establishes that as a disabled individual, he has a right to free utility services from CWLP.

Upon reviewing the Complaint, the Court concludes there are no facts tending to show that discovery will reveal any evidence to support liability based on a failure to accommodate ADA claim. Accordingly, the Plaintiff

is unable to allege a plausible failure to accommodate claim and the Defendant is entitled to dismissal.

C. ADA retaliation claim

In Count II, the Plaintiff alleges CWLP retaliated against him due to his repeated complaints to United States Senator Richard Durbin and the Office of the Mayor concerning the repeated breaches of accommodation by cuts in services and the "fraudulent" imposition of reconnection fees. Moreover, CWLP knowingly retaliated and became a party to the conspiracy of SHA with intent to harm the Plaintiff because of his legal action against SHA, a city-based agency.

In order to prove retaliation, a plaintiff must present evidence that: (1) he engaged in statutorily protected activity; (2) he was subjected by the defendant to an adverse action; and (3) there is a causal connection between the two events. See Povey v. City of Jeffersonville, Ind., 697 F.3d 619, 624 (7th Cir. 2012).

For purposes of the motion, the Court assumes the Plaintiff can meet the first element based on the allegation that he complained to public

officials regarding cuts in services and reconnection fees. Because the Plaintiff's utility services were disconnected only upon non-payment and those services were reconnected upon payment, however, the Plaintiff cannot meet the third element and thus fails to allege a plausible claim for ADA retaliation.

### D. Conspiracy to violate civil rights

In Count III, the Plaintiff alleges that Defendant conspired under § 1983 to violate his civil rights. He contends the Defendant City knowingly became a party to the conspiracy of SHA with the intent to harm the Plaintiff due to his legal action against city-based agency SHA, thereby allowing CWLP to interfere with the action by cuts in service.

A village or municipality may be found liable under § 1983 if it violates constitutional rights pursuant to an official custom or policy. See Wragg v. Village of Thornton, 604 F.3d 464, 467 (7th Cir. 2010). To establish an official policy or custom, a plaintiff must show his "constitutional injury was caused by (1) the enforcement of an express policy of the [municipality]; (2) a widespread practice that is so permanent

and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." Id. (internal quotation marks and citation omitted).

"To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or it agents." Cooney v. Casady, 735 F.3d 514, 518 (7th Cir. 2013) (internal quotation marks and citation omitted).

There is no evidence of a conspiracy or constitutional deprivation. Even if the Plaintiff could allege a constitutional violation, there is no evidence it was caused by the Defendant's custom or policy. Because the Plaintiff's Complaint establishes that his utility services were disconnected based on his failure to timely pay his bills and were re-connected upon payment wherein he was assessed a late fee, neither of which establishes a constitutional violation, the Court concludes the Plaintiff is unable to allege a plausible § 1983 claim against the Defendant City of Springfield.

### E. State law claim

In Count IV, the Plaintiff purports to assert a state law claim for conspiracy to commit fraud and unfair exploitation of a disabled consumer pursuant to 815 ILCS 505. The Plaintiff does not allege the portion of the Consumer Fraud and Deceptive Business Practices on which he relies.

Having determined that Plaintiff's claims will be dismissed because he has failed to allege a plausible claim as to Counts I, II and III of the Complaint, the Court declines to exercise its supplemental jurisdiction over the state law claim alleged in Count IV. See 28 U.S.C. § 1367(c)(3).

Ergo, the Defendant's Motion to Dismiss the Complaint [d/e 7] is ALLOWED.

Counts I, II and III are Dismissed with Prejudice.

Count IV is Dismissed without Prejudice.

The Clerk shall enter Judgment and terminate the case.

ENTER: July 2, 2014

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge